UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN CODY,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>JEFFREY BEARD, et al.,<br><br>　　　　　Defendants. | Case No.: 1:14-cv-01239-DAD-BAM (PC)<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES<br><br>(ECF No. 17)<br><br>**TWENTY (20) DAY DEADLINE** |

**FINDINGS AND RECOMMENDATIONS**

**I.     Procedural Background**

　　Plaintiff Jonathan Cody ("Plaintiff") is a state prisoner proceeding pro se in this civil rights action pursuant to 42 U.S.C. § 1983. This action currently proceeds on Plaintiff's first amended complaint against Defendants Hitchman and Boparai (erroneously sued as "Bupari") for deliberate indifference to serious medical needs in violation of the Eighth Amendment, and against Defendant Hitchman for retaliation in violation of the First Amendment.

　　On June 23, 2015, Defendants Hitchman and Boparai filed a motion for partial summary judgment based on Plaintiff's failure to exhaust available administrative remedies. Fed. R. Civ. P. 56(c); Albino v. Baca, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc), cert. denied, 135 S. Ct. 403

1

(2014). (ECF No. 17.) Defendants argue that Plaintiff did not identify Defendant Boparai in any inmate appeals, and that he did not include his retaliation claim against Defendant Hitchman in any inmate appeals. (Id.) On August 13, 2015, Plaintiff filed his opposition to Defendants' motion for partial summary judgment. (ECF No. 20.) Defendants replied on August 20, 2015. (ECF No. 21) The motion is deemed submitted. Local Rule 230(l).

For the reasons explained below, the Court now recommends that the motion for partial summary judgment be granted.

**II.     Legal Standard**

    **A.     Statutory Exhaustion Requirement**

Section 1997e(a) of the Prison Litigation Reform Act of 1995 provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, Booth v. Churner, 532 U.S. 731, 741 (2001), and the exhaustion requirement applies to all prisoner suits relating to prison life, Porter v. Nussle, 534 U.S. 516, 532 (2002).

The failure to exhaust is an affirmative defense, and the defendants bear the burden of raising and proving the absence of exhaustion. Jones v. Bock, 549 U.S. 199, 216, 127 S. Ct. 910, 921 (2007); Albino, 747 F.3d at 1166. "In the rare event that a failure to exhaust is clear on the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)." Albino, 747 F.3d at 1166. Otherwise, the defendants must produce evidence proving the failure to exhaust, and they are entitled to summary judgment under Rule 56 only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows he failed to exhaust. Id.

    **B.     Summary Judgment Standard**

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Albino, 747 F.3d at 1166; Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position,

whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, although it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

The defendants bear the burden of proof in moving for summary judgment for failure to exhaust, Albino, 747 F.3d at 1166, and they must "prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy," id. at 1172. If the defendants carry their burden, the burden of production shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Id. "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." Id. at 1166. However, "[i]f material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." Id.

**III.    Discussion**

    **A.    Summary of CDCR's Administrative Review Process**

The California Department of Corrections and Rehabilitation (CDCR) has an administrative grievance system for prisoner complaints. Cal. Code Regs., tit. 15 § 3084.1. The process is initiated by submitting a CDCR Form 602 describing the issue and the relief requested. Id. at § 3084.2(a). Three levels of review are involved—a first level review, a second level review and a third level review. Id. at § 3084.7. Bypassing a level of review may result in rejection of the appeal. Id. at § 3084.6(b)(15). Under § 1997e, a prisoner has exhausted his administrative remedies when he receives a decision at the third level. See Barry v. Ratelle, 985 F. Supp. 1235, 1237-38 (S.D. Cal. 1997).

///

///

**B.     Summary of Allegations Underlying Plaintiff's Eighth Amendment Claim**

In his first amended complaint, Plaintiff alleged that in February 1998, before his incarceration, he was diagnosed with Fibromyalgia Syndrome (FMS). The pain was unbearable and the only thing that would keep it in check was a combination of non-narcotic medications and physical therapy or Eastern medicine, such as acupuncture, and chiropractic adjustments. (FAC, ECF No. 23, p. 2.)

In March 2010, Plaintiff was sentenced to prison. While at San Quentin State Prison, a doctor agreed to prescribe Lyrica and Robaxin and referred Plaintiff to physical therapy. Plaintiff also was prescribed a transcutaneous electrical nerve stimulation (TENS) unit. Over the next few years, Plaintiff's medications and physical therapy were re-prescribed on a regular basis. Plaintiff also was prescribed Ultram, a non-narcotic medication, for the pain. Plaintiff could manage his pain and daily activities while taking Ultram, Robaxin, Flexaril and Lyrica. (Id.)

In March 2013, Plaintiff's Robaxin ran out and he requested a refill. Plaintiff was sent to Physician Assistant Hitchman and was told that his prescription would not be refilled. Plaintiff also was told that his complaining would only get him cut off the rest of his medications. Physician Assistant Hitchman then cut off the Ultram and said that the Lyrica would be cut off next. Physician Assistant Hitchman cut Plaintiff off of those medications. Defendant Hitchman later told Plaintiff that he was only following orders from the Chief Medical Officer. (FAC, p. 3.)

After his medications were cut off, Plaintiff's pain returned and his ability to sleep, sit, move, walk and exercise became harder. The simplest daily activities became unbearable. Plaintiff filed a 602 and asked to see a doctor. Plaintiff was seen by Dr. Ememoto, who asked irrelevant questions, looked at two-year old lab reports and prescribed vitamin D. During a second visit, when Plaintiff asked for physical therapy, Defendant Ememoto gave Plaintiff a list of exercises. Plaintiff later saw Dr. Cayman, who told Plaintiff that FMS did not exist. Dr. Cayman put in an order for Plaintiff to see a rheumatologist, but the order was denied by Chief Medical Officer Boparai. Dr. Cayman told Plaintiff that he was under direct orders not to prescribe physical therapy and to cut back pain meds. (Id.)

Plaintiff alleges that doctors will only see him once every three months and refuse to allow him to attend physical therapy despite the recommendation that he return. At one point, Plaintiff was

shown a note written by Defendant Boparai asking if there was a way to cut Plaintiff off of Lyrica. Plaintiff was told by Defendant Hitchman that this was a cost issue, not a medical decision. Defendant Hitchman also told Plaintiff that he was paying the price for his attorney singling Defendant Hitchman out in an email to the CMO.  (Id.)

### C.  Statement of Undisputed Facts[1]

1. Plaintiff filed his initial Complaint in the U.S. District Court for the Eastern District of California on August 7, 2014. (Compl., ECF No. 1, p. 1.)

2. Plaintiff filed his First Amended Complaint (i.e., the operative complaint) on March 9, 2015 (FAC, at p. 1.)

3. Plaintiff alleges that the conduct at issue in the First Amended Complaint took place in March 2013. (FAC, at p. 3.)

4. At all times relevant to the First Amended Complaint, Plaintiff Jonathan Cody (CDCR No. AC-5613) was a state inmate incarcerated at Avenal State Prison ("ASP") in Avenal, California. (FAC, at pp. 1-2.)

5. The conduct at issue in the First Amended Complaint, as screened, took place at ASP.[2] (FAC, at p. 2.)

6. ASP has an inmate grievance process for inmate healthcare appeals, which contains three levels of review. An inmate's appeal must proceed through the Third Level of Review in order to conclude the inmate grievance process. (Decl. of S. Kiester, ECF No. 17-3, ¶¶ 1-3; Decl. of R. Robinson, ECF No. 17-4, ¶¶ 1-6; FAC, at 1.)

7. From the month of the conduct at issue in the First Amended Complaint (March 2013) through the date Plaintiff filed his initial Complaint (August 7, 2014), the Appeals Coordinator at ASP

---

[1]  See Plaintiff's Response to Defendants' Statement of Undisputed Facts and Statement of Disputed Facts. (ECF No. 20, pp. 13-18.) Any facts which the parties genuinely dispute are not included in this statement of undisputed facts.

[2]  Plaintiff argues that his First Amended Complaint also challenges conduct that relates back to 2010, and which took place when he was not incarcerated at ASP. (ECF No. 20, p. 13-14, 17.) Although his First Amended Complaint discusses medications and treatments prescribed by non-parties while Plaintiff was incarcerated at San Quentin State Prison in 2010, and summarizes his medical condition over the next few years, Plaintiff's claims only challenge Defendants' conduct which occurred in March 2013 while he was incarcerated at ASP. (FAC, at p. 3.)

accepted two healthcare appeals filed by Plaintiff— appeal No. ASP-HC-13026504 and appeal No. ASP-HC-13027274. (Decl. of S. Kiester, ¶¶3-4; Cody Appeal History, ECF No. 17-3, p. 5.)

8. In appeal No. ASP-HC-13026504, submitted May 23, 2013, Plaintiff complained that his "[n]urse practitioner (PA) discontinued [his] med[ications] prescribed by M.D. and Phys. Therapy [and] that were sanctioned by 3rd level response" despite complaints of severe muscle spasms and pain in his back and chest. Plaintiff requested "to resume [his] medications (Robaxin and Ultram) and physical therapy and for [his] needs to be attended to in a reasonable timeframe." (Decl. of S. Kiester, ¶ 5; ASP-HC-13026504, ECF No. 17-3, p. 27.)

9. Plaintiff did not identify the name of the PA allegedly responsible for discontinuing his medications in appeal No. ASP-HC-13026504, nor any other responsible staff members. (Id.)

10. The appeal was accepted at the First Level of Review on or about June 4, 2013. The First Level of Review partially granted Plaintiff's appeal on June 28, 2013, stating that Plaintiff was receiving timely and effective care from providers at ASP, and that Plaintiff could submit a Medical Request for Services (CDCR Form 7362) at any time for his medical concerns. Plaintiff's requests for physical therapy and to resume Robaxin and Ultram were specifically denied.[3] (Id.; see also 6/28/2013 Institution Resp. for First Level HC Appeal, ECF No. 17-3, pp. 25-26.)

11. Plaintiff submitted his appeal to the Second Level of Review on July 18, 2013. The appeal was accepted at the Second Level of Review on or about July 24, 2013. On August 5, 2013, the Second Level of Review partially granted Plaintiff's appeal, stating that Plaintiff would remain on the drug Lyrica and was scheduled for a follow-up appointment in four to five months. Plaintiff's requests for physical therapy and to resume Robaxin and Ultram were specifically denied. (Decl. of S. Kiester, ¶ 5; ASP-HC-13026504, ECF No. 17-3, p. 28; Institution Resp. for Second Level HC Appeal, ECF No. 17-3, pp. 31-32.)

///

---

[3] Plaintiff notes that he disputes whether he was actually provided any additional care subsequent to filing appeal no. ASP-HC-13026504. (ECF No. 20, p. 15.) This disputed fact is not a material fact for determining this motion for partial summary judgment, because whether Plaintiff actually received additional care or not has no bearing on whether he exhausted his administrative remedies.

1  12. In appeal No. ASP-HC-13027274, submitted on or about October 28, 2013, Plaintiff complained that he was "not receiving care in [a] timely manner," and that he was not receiving Robaxin, Ultram, nor physical therapy. (Decl. of S. Kiester, ¶ 6; ASP-HC-13027274, ECF No. 17-3, p. 34.)

13. Plaintiff did not identify the name(s) of any responsible staff members in appeal No. ASP-HC-13027274. (Id.)

14. Plaintiff's appeal was cancelled at the First Level of Review on October 30, 2013, as being duplicative of appeal No. ASP-HC-13026504. (Id.; see also 10/30/2013 Appeals Resp., ECF no. 17-3, p. 36.)

15. From the month of the conduct at issue in the First Amended Complaint (March 2013) through the date Plaintiff filed his initial Complaint (August 7, 2014), the Third Level of Review accepted one inmate healthcare appeal from Plaintiff— appeal No. ASP-HC-13026504. (Decl. of R. Robinson ¶¶ 7-8; Cody Appeal History, ECF No. 17-4, p. 6)

16. In response to the Second Level decision in appeal No. ASP-HC-13026504, Plaintiff claimed that PA Hitchman "has reported incorrectly, and refuses to acknowledge [Plaintiff's] medical problems," and "discontinued a valid prescription without examining [him]." Plaintiff further claimed that PA Hitchman "has said in the past that he doesn't believe fibromyalgia exists." Plaintiff reemphasized that he wished to resume treatment with Ultram, Robaxin, and physical therapy. (Decl. of R. Robinson, ¶ 9; ASP-HC-13026504, ECF No. 17-4, p. 12-13.)

17. Plaintiff did not name any other responsible staff members other than PA Hitchman in submitting appeal No. ASP-HC-13026504 to the Third Level. (Id.)

18. On November 25, 2013, the Third Level of Review denied Plaintiff's appeal, finding that Plaintiff's medical condition had been properly evaluated and that he was receiving treatment deemed medically necessary. (Id.)

19. Plaintiff has filed at least ten healthcare appeals since April 27, 2010. (Decl. of S. Kiester, ¶ 7; Cody Appeal History, ECF No. 17-3, pp. 5-8.)

///

///

7

**D. Analysis**

**1. Deliberate Indifference Claim Against Defendant Boparai**

Defendants first argue that Plaintiff's claim deliberate indifference to serious medical needs against Defendant Boparai should be dismissed because Plaintiff failed to name Defendant Boparai in any of his health care appeals. (ECF No. 17-1, pp. 7-8.) Cal. Code Regs. tit. 15, § 3084.2(a)(3) (On the inmate appeal form, "[t]he inmate or parolee shall list all staff member(s) involved and shall describe their involvement in the issue."). Plaintiff admits that he did not provide Defendant Boparai's name on any of his inmate appeal forms, but argues he has nevertheless sufficiently exhausted his administrative remedies. (ECF No. 20, pp. 4-8.) Plaintiff notes that Defendant Boparai identified himself as the first level reviewer for Plaintiff's appeal No. ASP-HC-13026504, (ECF No. 13-7, p. 27), and argues that this obviated the need for Plaintiff to identify Defendant Boparai in any appeal.

Although a procedural error may not always prevent a plaintiff from exhausting his administrative remedies, Reyes v. Smith, 810 F.3d 654, 657 (9th Cir. 2016), the plaintiff's description of his issue in his appeal must be sufficient to put the prison on notice of his claim so as to fulfill the basic purposes of exhaustion. Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009). In this case, Plaintiff's appeal No. ASP-HC-13026504—his only relevant appeal which was processed through all levels of review—solely concerned his complaints about Defendant Hitchman's conduct and treatment determinations. There is no mention of any other medical provider's involvement, nor any information otherwise identifying Defendant Boparai as a subject of that appeal. Although Defendant Boparai identified himself as one of the reviewers of Plaintiff's appeal, this is a separate issue from whether Plaintiff put the prison on notice of any complaint about Defendant Boparai's conduct outside of the appeals process. That is, Plaintiff's appeal does not show that he put the prison officials on notice of his allegations against Defendant Boparai which form the basis of his first amended complaint so that they could be redressed.

To the extent Plaintiff is arguing that his claim in his first amended complaint is based on Defendant Boparai's administrative review of his appeal, this position is untenable. Prisoners have no "free-standing cause of action for improper grievance-rejection." See Ott v. Lopez, No. CV 11-04291 PSG RZ, 2012 WL 2366414, at *1 (C.D. Cal. May 8, 2012) report and recommendation adopted, No.

CV 11-04291 PSG RZ, 2012 WL 2366413 (C.D. Cal. June 20, 2012). The Court in screening Plaintiff's complaint found he alleged a claim concerning conduct in March 2013 for deliberate indifference to his serious medical issues, not for the incorrect denial of an appeal. (ECF No. 7.)

Plaintiff's failure here is more than merely procedural. Rather, Plaintiff's grievance failed to "alert[ ] the prison to the nature of the wrong for which redress is sought" and provide sufficient information "to allow prison officials to take appropriate responsive measures." Griffin, 557 F.3d at 1120-21 (quotation marks omitted). Therefore, the Court finds that Defendants have carried their burden of showing that Plaintiff did not properly exhaust his available administrative remedies against Defendant Boparai.

### 2.  Retaliation Claim Against Defendant Hitchman

Defendants next argue that Plaintiff failed to exhaust his administrative remedies for his retaliation claim against Defendant Hitchman by failing to mention any retaliatory behaviour in his inmate appeals. (ECF No. 17-1, pp. 8-9.) In opposition, Plaintiff argues that he did sufficiently provide notice of his retaliation claim, because he wrote in his appeal that "[u]pon reporting" his medical complaints to Defendant Hitchman, he was told he would not see a primary care physician for three months and his medications and physical therapy were discontinued. (ASP-HC-13026504, ECF No. 17-3, p. 27.) Plaintiff argues that this shows he informed the prison officials that Defendant Hitchman discontinued Plaintiff's treatments in retaliation for complaining about his condition.

"Under the PLRA, a grievance 'suffices if it alerts the prison to the nature of the wrong for which redress is sought.'" Reyes, 810 F.3d at 659 (quoting Sapp v. Kimbrell, 623 F.3d 813, 824 (9th Cir. 2010)). Although the grievance need not include legal terminology or legal theories, it must alert the prison to the nature of the problem and facilitate its resolution. Griffin, 557 F.3d at 1120. In this case, Plaintiff's appeal does not sufficiently explain that Defendant Hitchman was retaliating against Plaintiff for reporting symptoms. Plaintiff's appeal describes his issue, in full, as follows:

> Upon reporting severe muscle spasm/pain in back + chest, I was told I wouldn't be seen by the PCP for 3 months. Nurse Practitioner (PA) [Hitchman] discontinued meds prescribed by MD and Phys Therapy, that were sanctioned by 3rd level response.

9

(ASP-HC-13026504, ECF No. 17-3, p. 27) (errors in original). This statement does not suggest that Defendant Hitchman's treatment recommendations and conduct were done for any retaliatory purposes. A plain reading of Plaintiff's appeal suggests, at most, that Plaintiff disagreed with Defendant Hitchman's treatment recommendations, which were made despite Plaintiff reporting severe medical issues. No retaliatory animus or reasons for Defendant Hitchman's conduct are even hinted at in Plaintiff's appeal. Thus, the Court finds that Defendants have carried their burden of showing that Plaintiff has not exhausted his administrative remedies with regard to his First Amendment retaliation claim against Defendant Hitchman.

## V.     Conclusion and Recommendation

For the reasons stated, IT IS HEREBY RECOMMENDED that Defendants' motion for partial summary judgment for failure to exhaust administrative remedies (ECF No. 17) be granted.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **twenty (20) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:     **February 19, 2016**            /s/ Barbara A. McAuliffe          
                                       UNITED STATES MAGISTRATE JUDGE