# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN CODY, | ) 1:14-cv-01239-DAD-BAM (PC) |
| Plaintiff, | ) FINDINGS AND RECOMMENDATIONS RECOMMENDING: |
| v. | ) (1) DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S SURREPLY BE GRANTED; |
| JEFFREY BEARD, et al., | ) (2) PLAINTIFF'S MOTION TO DENY SUMMARY JUDGMENT BE DENIED; |
| Defendants. | ) (3) PLAINTIFF'S MOTION FOR THE APPOINTMENT OF COUNSEL BE DENIED; |
| | ) (4) DEFENDANT HITCHMAN'S MOTION FOR SUMMARY JUDGMENT BE GRANTED; AND |
| | ) (5) PLAINTIFF'S MOTION TO AMEND BE DENIED |
| | ) (ECF Nos. 40, 41, 52) |
| | ) **FOURTEEN (14) DAY DEADLINE** |

## <u>Findings and Recommendations</u>

## I.     Introduction

Plaintiff Jonathan Cody ("Plaintiff") is a state prisoner proceeding *pro se* in this civil rights action pursuant to 42 U.S.C. § 1983.  This action proceeds solely on Plaintiff's claim

against Defendant Hitchman for deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment to the United States Constitution. (ECF No. 37.)

Currently before the Court is Defendant Hitchman's motion for summary judgment filed pursuant to Federal Rule of Civil Procedure 56.[1] (ECF No. 41.) Plaintiff opposed the motion on August 15, 2017. (ECF No. 47.) Embedded in Plaintiff's opposition appear to be (1) a motion pursuant to Federal Rule of Civil Procedure 56(f) to deny summary judgment because Defendant's discovery responses were deficient; and (2) a motion to appoint counsel. (ECF No. 47 at p. 6.) Defendant Hitchman replied to Plaintiff's opposition on August 24, 2016. (ECF No. 50). Following Defendant Hitchman's reply, Plaintiff submitted a surreply on September 19, 2016. (ECF No. 51.) On October 6, 2016, Defendant Hitchman moved to strike Plaintiff's unauthorized surreply, which Plaintiff opposed. (ECF Nos. 52, 53.)

Also before the Court is Plaintiff's motion to amend his complaint. In that motion, Plaintiff seeks to add a request for monetary damages (punitive and compensatory) and injunctive relief. (ECF No. 40, pp. 2, 3.) He also seeks to supplement his pleading to include occurrences that transpired after his prior filings, along with new parties. (*Id.*, p. 4.) Defendant Hitchman opposed the motion, and Plaintiff replied. (ECF Nos. 43, 45.)

The foregoing motions are deemed submitted. Local Rule 230(l).

## II.    Motion to Strike Plaintiff's Surreply

As noted above, Defendant Hitchman filed a motion for summary judgment, Plaintiff responded and Defendant replied. Thereafter, on September 19, 2016, Plaintiff filed a surreply to Defendant's reply. (ECF No. 51.) Defendant now moves to strike Plaintiff's surreply, arguing that is not authorized by either the Court's Local Rules or the Federal Rules of Civil Procedure. Defendant also indicates that the Court did not request a surreply or grant a request on Plaintiff's behalf to provide one. (ECF No. 52.)

In opposition, Plaintiff contends that nothing in the Federal Rules of Civil Procedure prohibits the filing of a surreply. Plaintiff's opposition also appears to refer to a different motion

---

[1]    Concurrent with the motion, Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment. (ECF No. 41); *See Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1988; *Klingele v. Eikenberry*, 849 F.2d 409, 411-12 (9th Cir. 1988).

2

to strike filed by Defendant (ECF No. 34) in connection with Plaintiff's surreply in support of his objections to Findings and Recommendations on a motion for summary judgment on the ground of exhaustion. (ECF No. 53, pp. 1-2.)

Plaintiff's opposition is unavailing. This Court's Local Rules provide for a motion, an opposition, and a reply. Local Rule 230(1). As Defendant correctly points out, neither the Local Rules nor the Federal Rules of Civil Procedure provide the right to file a response to a reply. *See, e.g.*, *Wyatt v. Zanchi*, No. 1:09-cv-01242 BAM PC, 2011 WL 5838438, at *5 (E.D. Cal. Nov. 21, 2011). In this case, the Court neither requested a response to Defendant Hitchman's reply nor granted a request on Plaintiff's behalf to file such a response. Plaintiff's arguments regarding a motion to strike filed in connection with a prior motion for summary judgment on exhaustion grounds are not persuasive given that the Court has already ruled on that motion to strike and the related motion for summary judgment. *See* ECF Nos. 37, 38. Accordingly, the Court will recommend that Plaintiff's response to Defendant Hitchman's reply be stricken from the record and not considered for purposes of summary judgment.

## III. Plaintiff's Motion to Deny Summary Judgment

In his opposition, Plaintiff appears to seek denial of Defendant Hitchman's motion for summary judgment under Federal Rule of Civil Procedure 56(f) based on Defendant's purportedly deficient discovery responses. (ECF No. 47 at p. 6.) Rule 56(f) provides that "[a]fter giving notice and a reasonable time to respond, the court may: (1) grant summary judgment for a nonmovant; (2) grant the motion on grounds not raised by a party; or (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." Fed. R. Civ. P. 56(f). The Court declines Plaintiff's invitation to deny summary judgment under Rule 56(f) based on Defendant's allegedly deficient discovery responses. Plaintiff has not specified the manner in which the responses are deficient. He also has not demonstrated how or why the deficient responses have prevented him from opposing summary judgment or how they entitle him to any form of relief.

Although styled as a motion under Rule 56(f), it appears that Plaintiff is instead moving, pursuant to Rule 56(d), for the Court to deny the motion for summary judgment so that he may

obtain further discovery responses. Plaintiff asserts that he has essentially been denied discovery because Defendant's discovery responses "answer nothing" and Defendants "used every means by which to avoid providing discovery." (ECF No. 47 at p. 6.)

"If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). Pursuant to Rule 56(d), Plaintiff bears the burden of specifically identifying relevant information, and demonstrating that the evidence sought actually exists and that it would prevent summary judgment. *Blough v. Holland Realty, Inc.*, 574 F.3d 1084, 1091 n. 5 (9th Cir. 2009) (citation omitted); *Tatum v. City and County of San Francisco*, 441 F.3d 1090, 1100–01 (9th Cir. 2006). Additionally, Plaintiff must make some showing of diligence, that he sought the requested information during the discovery period, or that there is good reason he has not been able to obtain the information before now. *See Landmark Dev. Corp. v. Chambers Corp.*, 752 F.2d 369, 372-73 (9th Cir. 1985).

The Court finds that Plaintiff has not met his burden under Rule 56(d) to identify any relevant information that exists and that would prevent summary judgment. Plaintiff does not explain how denial or delay of the motion for summary would allow him to produce evidence creating a triable issue of fact regarding deliberate indifference to his medical needs. Plaintiff has not shown that additional discovery would reveal specific facts precluding summary judgment. *Tatum*, 441 F.3d at 1101. Plaintiff also has not made the requisite showing of diligence. There is no indication that Plaintiff moved to compel further discovery responses or that he was somehow prevented from doing so earlier in this litigation. For these reasons, the Court will recommend that Plaintiff's motion to deny, delay or otherwise continue the motion for summary judgment pursuant to Rule 56(d) be denied.

## IV.    Plaintiff's Motion to Appoint Counsel

Plaintiff requests that the Court appoint him counsel based, in part, on Defendant's purportedly deficient discovery responses. (ECF No. 47 at p. 6.)

Plaintiff does not have a constitutional right to appointed counsel in this action, *Rand v. Rowland*, 113 F.3d 1520, 1525 (9th Cir. 1997), *withdrawn in part on other grounds*, 154 F.3d 952, 954 n. 1 (9th Cir. 1998), and the Court cannot require an attorney to represent Plaintiff pursuant to 28 U.S.C.§ 1915(e)(1). *Mallard v. United States District Court for the Southern District of Iowa*, 490 U.S. 296, 298, 109 S.Ct. 1814, 1816 (1989). However, in certain exceptional circumstances the Court may request the voluntary assistance of counsel pursuant to section 1915(e)(1). *Rand*, 113 F.3d at 1525. Without a reasonable method of securing and compensating counsel, the Court will seek volunteer counsel only in the most serious and exceptional cases. In determining whether "exceptional circumstances exist, the district court must evaluate both the likelihood of success on the merits [and] the ability of the [plaintiff] to articulate his claims pro se in light of the complexity of the legal issues involved." *Id.* (internal quotation marks and citations omitted).

Here, the Court does not find the requisite exceptional circumstances. There is no indication in the record that Plaintiff is unable to articulate his claim pro se. Further, Defendant's discovery responses, whether deficient or otherwise, are not sufficient grounds for the appointment of counsel. Accordingly, the Court will recommend that Plaintiff's motion for the appointment of counsel be denied.

**V.      Defendant's Motion for Summary Judgment**

Defendant Hitchman argues that summary judgment should be granted because (1) Defendant was not deliberately indifferent to Plaintiff's medical needs; (2) Plaintiff's request for injunctive relief is moot; and (3) Defendant is entitled to qualified immunity. For the reasons explained below, the Court will recommend granting Defendant Hitchman's motion for summary judgment.

**A.      Legal Standard**

Summary judgment is appropriate when the pleadings, disclosure materials, discovery, and any affidavits provided establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that may affect the outcome of the case under the applicable law. *See Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The exact nature of this responsibility, however, varies depending on whether the issue on which summary judgment is sought is one in which the movant or the nonmoving party carries the ultimate burden of proof. *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). If the movant will have the burden of proof at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Id.* (citing *Celotex*, 477 U.S. at 323). In contrast, if the nonmoving party will have the burden of proof at trial, "the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Id.*

If the movant satisfies its initial burden, the nonmoving party must go beyond the allegations in its pleadings to "show a genuine issue of material fact by presenting affirmative evidence from which a jury could find in [its] favor." *F.T.C. v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009) (emphasis omitted). "[B]ald assertions or a mere scintilla of evidence" will not suffice in this regard. *Id.*; *see also Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56[], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.") (citation omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

In resolving a summary judgment motion, "the court does not make credibility determinations or weigh conflicting evidence." *Soremekun*, 509 F.3d at 984. Instead, "[t]he evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn

in [its] favor." *Anderson*, 477 U.S. at 255. Inferences, however, are not drawn out of the air; the nonmoving party must produce a factual predicate from which the inference may reasonably be drawn. *See Richards v. Nielsen Freight Lines*, 602 F.Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).

In arriving at these findings and recommendations, the Court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this Court did not consider the argument, document, paper, or objection. This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

### B.    Undisputed Material Facts ("UMF")[2]

**1.** At all times relevant to the First Amended Complaint, Plaintiff Jonathan Cody was a state inmate incarcerated at Avenal State Prison ("ASP") in Avenal, California. Pl.'s First Am. Compl. at 1-3.

**2.** Plaintiff has been incarcerated at Valley State Prison ("VSP") in Chowchilla, California since at least July 9, 2015. ECF No. 18.

**3.** Defendant S. Hitchman has been employed by the California Department of Corrections and Rehabilitation ("CDCR") as a Physician's Assistant at ASP since May 10, 2010. ECF No. 41-3, Declaration of S. Hitchman ("Hitchman Decl.") ¶ 2.

**4.** In February 1998, prior to his incarceration, Plaintiff was diagnosed with fibromyalgia. ECF No. 41-4, Ex. A to Declaration of Andrew Whisnand ("Whisnand Decl."), at AGO006-007.

**5.** Fibromyalgia is a clinical diagnosis based largely on subjective, patient-reported symptoms: there is no diagnostic test to determine whether a patient has fibromyalgia.

---

[2]    These undisputed facts are derived from Defendant's Separate Statement of Undisputed Material Facts in Support of Motion for Summary Judgment and Defendant Hitchman's Response to Plaintiff's Response to Separate Statement of Undisputed Material Facts. (ECF Nos. 41-2 and 50-1). Unless otherwise indicated, only disputed material facts are omitted from this statement and relevant objections are overruled.

Diagnostic Criteria published by the American College of Rheumatology require widespread pain for at least three months coupled with pain in at least eleven of eighteen tender point sites. Hitchman Decl. ¶ 72.

6.     On March 18, 2013, Defendant Hitchman examined Plaintiff during a medical appointment at ASP.  Hitchman Decl. ¶ 3 and Ex. A at AGO0002-0005.

Plaintiff attempts to dispute this fact by asserting that there was no examination.  (ECF No. 47, p. 12.)  Plaintiff's assertion does not raise a genuine dispute of material fact as to whether Defendant Hitchman saw Plaintiff during a medical appointment at ASP.  Further, documentary evidence regarding the visit indicates that Defendant Hitchman completed an objective evaluation, which included a trigger point assessment.  Ex. A to Hitchman Decl. at AGO0002.

7.     From early 2012 through March 2013, Plaintiff attended an auto mechanics vocation class at ASP, five hours a day, four days a week.  Ex. A to Whisnand Decl. at AGO013-014.

8.     Plaintiff also took distance-learning classes during this period through a local community college.  *Id.* at AGO014-015.

9.     As of the date of the March 18, 2013 appointment, Defendant Hitchman was aware of the fact that Plaintiff was involved in an educational program.  Ex. A to Hitchman Decl. at AGO002.

10.     Prior to March 2013, Plaintiff also did light exercise, such as walking, stretching, and exercises he had learned from prior physical therapy.  Ex. A to Whisnand Decl. at AGO016.

11.     Prior to his incarceration, exercise was one of the treatment options recommended by Plaintiff's medical professionals.  *Id.* at AGO009.

12.     As of the date of the March 18, 2013 appointment, Defendant Hitchman was aware of the fact that Plaintiff was able to complete light exercises, such as walking laps.  Ex. A to Hitchman Decl. at AGO002.

13.     Prior to the March 18, 2013 appointment, Plaintiff had a nonformulary prescription for Robaxin, a muscle relaxant, which had run out.  Plaintiff requested a refill of this

medication at the March 18, 2013 appointment.  Hitchman Decl. at ¶ 6; ECF No. 47, p. 1.

14.     Robaxin is not approved by the FDA to treat fibromyalgia.  To the extent that Robaxin is prescribed to treat fibromyalgia, it is prescribed for acute, rather than chronic fibromyalgia.  Plaintiff's records indicate that he has chronic, rather than acute fibromyalgia.  Hitchman Decl. at ¶ 74.

Plaintiff attempts to raise a genuine dispute of material fact by asserting that he suffers from severe, chronic and acute fibromyalgia.  However, Plaintiff is not a medical expert and cannot diagnose his own medical condition.  Fed. R. Evid. 701(c) (non-expert witness testimony is limited to an opinion *not* based on scientific, technical or other specialized knowledge) (emphasis added).

15.     Plaintiff was previously evaluated by the Physical Medicine and Rehabilitation physician on September 8, 2010, who recommended that Plaintiff not use muscle relaxants, as there was no clear medical indication for their use in treating his fibromyalgia.  Hitchman Decl. at ¶ 7.

16.     Defendant Hitchman declined to renew Plaintiff's Robaxin prescription, as it was not medically indicated by his particular medical condition.  *Id.* at ¶ 8; Ex. A to Whisnand Decl. at AGO018, AGO0019, AGO0020.

Although Plaintiff attempts to raise a dispute by contesting Defendant's assertion "that it was not medically indicated," Plaintiff is not a medical expert and cannot opine as to whether Robaxin was medically indicated for his fibromyalgia.  Fed. R. Evid. 701(c).

17.     At the time of the March 18, 2013 appointment, Plaintiff also possessed a prescription for tramadol (i.e., Ultram), which he reportedly took at bedtime to reduce discomfort and enable him to sleep.  Hitchman Decl. at ¶ 9.

Plaintiff attempts to raise a dispute by stating "Defendant Hitchman twists words in his self-serving declaration: to wit:  the Ultram was to reduce pain 'to' enable sleep, not to enable sleep in and of itself, per se."  (ECF No. 47, p. 2.)  Plaintiff's argument is not entirely clear.  However, there does not appear to be a material dispute that Plaintiff took Ultram to reduce discomfort to enable sleep.

**18.** Tramadol is not medically indicated for use as a sleep aid. Hitchman Decl. at ¶ 10.

**19.** During the March 18, 2013 appointment, Plaintiff also requested to receive an ongoing physical therapy routine. Hitchman Decl. at ¶ 11; Ex. A to Whisnand Decl. at AGO024-025, AGO016.

**20.** There is no policy against physical therapy at ASP. If an inmate's primary care physician recommends physical therapy, it is routinely provided. Hitchman Decl. at ¶ 76.

**21.** Defendant Hitchman informed Plaintiff that there was no medical indication for an ongoing physical therapy routine as Plaintiff had previously been instructed in self-directed exercises he could complete on his own. Hitchman Decl. at ¶ 11; Ex. A to Whisnand Decl. at AGO024-25, AGO016.

**22.** During the March 18, 2013 appointment, Plaintiff also requested a foam roller and an orthopaedic pillow; Defendant Hitchman informed Plaintiff that these items were not medically indicated for his particular medical condition. Hitchman Decl. at ¶ 12.

**23.** At the time of the March 18, 2013 appointment, Plaintiff possessed a transcutaneous electrical nerve stimulation ("TENS") unit that he could use on his own to help treat the symptoms of his fibromyalgia. Hitchman Decl. at ¶ 13; Ex. A to Whisnand Decl. at AGO021.

**24.** According to Plaintiff, a TENS unit is a device that sends an electrical shock to one's muscles in order to minimize muscular pain. Ex. A to Whisnand Decl. at AGO021-022, AGO026.

**25.** Lyrica is one of three medications approved by the FDA to treat fibromyalgia (along with Cymbalta and Savella). Hitchman Decl. at ¶ 73.

**26.** Defendant Hitchman did not cancel Plaintiff's Lyrica prescription at the March 18, 2013 appointment. Hitchman Decl. at ¶ 14; Ex. A to Whisnand Decl. at AGO021-022, AGO026.

**27.** After March 2013, Plaintiff stopped exercising, which led to weight gain and which exacerbated his fibromyalgia. Ex. A to Whisnand Decl. at AGO016-017.

**28.**   On June 17, 2013, Defendant Hitchman examined Plaintiff during a medical appointment at ASP.  Hitchman Decl. at ¶ 16 and Ex. B.

**29.**   The purpose of the June 17, 2013 appointment was to follow-up with Plaintiff's pain and discomfort associated with his fibromyalgia.  Hitchman Decl. at ¶ 17.

**30.**   At the June 17, 2013 appointment, Defendant Hitchman noted that Plaintiff's clinical presentation largely derived from subjective complaints of discomfort with minimal to no objective evidence to support this presentation.  *Id.* at ¶ 19.

Plaintiff attempts to raise a dispute by arguing that "[t]here are years of medical records that exist as 'objective evidence.'"  (ECF No. 47, p. 2.)  This argument is unpersuasive as the statement of fact is based on Plaintiff's presentation on June 17, 2013, and not some other time period.

Plaintiff also argues that Defendant Hitchman failed to conduct a basic physical examination and failed to check muscle tension and trigger points.  Plaintiff is not a medical expert and cannot opine that Defendant Hitchman's objective findings and evaluation were inappropriate or incorrect.  Fed. R. Evid. 701(c).

**31.**   During the June 17, 2013 appointment, Plaintiff requested to resume treatment with his prior medications—Robaxin and tramadol (i.e., Ultram)—and to receive an ongoing physical therapy routine.  Hitchman Decl. at ¶ 20.

**32.**   Defendant Hitchman informed Plaintiff that an ongoing physical therapy routine was not medically indicated for his particular medical condition.  *Id.* at ¶ 23.

**33.**   At the time of the June 17, 2013 appointment, Plaintiff possessed a TENS unit which he could use on his own to help treat the symptoms of his fibromyalgia.  *Id.* at ¶ 24; Ex. A to Whisnand Decl. at AGO011-012, AGO010-011.

**34.**   At the time of the June 17, 2013 appointment, Plaintiff was taking three 75 mg Lyrica capsules twice a day, as prescribed.  Defendant Hitchman did not cancel Plaintiff's Lyrica prescription.  Hitchman Decl. at ¶ 25; Ex. A to Whisnand Decl. at AGO026.

**35.**   At the conclusion of the June 17, 2013 appointment, Defendant Hitchman instructed Plaintiff to submit a Form CDC 7362 Inmate Request for Health Services if he had

any further concerns or complaints with regard to his treatment.  Hitchman Decl. at ¶ 26.

**36.** On July 25, 2013, Defendant Hitchman examined Plaintiff during a medical appointment at ASP.  *Id.* at ¶ 27 and Ex. C.

**37.** The purpose of the July 25, 2013 appointment was to follow-up with Plaintiff's pain and discomfort associated with his fibromyalgia.  *Id.* at ¶ 28.

**38.** During the July 25, 2013 appointment, Plaintiff reported knots and spasms in his neck and shoulders, and associated pain.  Plaintiff also reported significant pain, sometimes preventing him from bathing, turning his neck, or walking without discomfort.  *Id.* at ¶ 29.

**39.** At the time of the July 25, 2013 appointment, Plaintiff was taking three 75 mg Lyrica capsules twice a day, as prescribed.  *Id.* at ¶ 31.

**40.** At the conclusion of the July 25, 2013 appointment, Defendant Hitchman informed Plaintiff that he should return for a follow-up appointment in four to five months for further assessment of his fibromyalgia and chronic pain management.  *Id.* at ¶ 32.

**41.** Defendant Hitchman also instructed Plaintiff to submit a Form CDC 7362 Inmate Request for Health Services if he had any further concerns or complaints regarding his treatment. *Id.* at ¶ 33.

**42.** On December 16, 2013, Defendant Hitchman examined Plaintiff during a medical appointment at ASP.  *Id.* at ¶ 34 and Ex. D.

**43.** The purpose of the December 16, 2013 appointment was to follow-up with Plaintiff's pain and discomfort associated with fibromyalgia.  *Id.* at ¶ 35.

**44.** During the December 16, 2013 appointment, Plaintiff requested an ongoing physical therapy routine, which Defendant Hitchman informed him was not medically indicated for his particular medical condition.  Defendant Hitchman reminded Plaintiff that he had been instructed on self-directed physical therapy, and was able to perform these exercises on his own. *Id.* at ¶ 37.

**45.** Plaintiff also requested to be prescribed a muscle relaxant.  Defendant Hitchman reminded Plaintiff that his previous prescription for muscle relaxants was denied by the Chief Medical Officer because it was not a recommended modality for the treatment of fibromyalgia.

*Id.* at ¶ 38.

**46.** Plaintiff also requested that he be prescribed tramadol. Defendant Hitchman reminded Plaintiff that his tramadol prescription had previously been discontinued because there was no medical indication for the use of pain medications to help him sleep. *Id.* at ¶ 39.

**47.** Plaintiff also inquired why his previous Request for Services (RFS) for a rheumatology consultation was denied. Defendant Hitchman informed him it was because it was determined that Plaintiff was stable on his current clinical presentation. *Id.* at ¶ 40.

Although Plaintiff attempts to raise a dispute by arguing that "he was not stable but rather needed treatment for pain," Plaintiff is not a medical expert and cannot opine as to whether his condition was clinically stable. Fed. R. Evid. 701(c).

**48.** At the time of the December 16, 2013 appointment, Plaintiff possessed a TENS unit which he could use on his own to help treat the symptoms of his fibromyalgia. *Id.* at ¶ 41.

**49.** At the time of the December 16, 2013 appointment, Plaintiff was taking three 75 mg Lyrica capsules twice a day, as prescribed. Defendant Hitchman did not cancel Plaintiff's Lyrica prescription, but rather submitted a Nonformulary Drug Request for its renewal. *Id.* at ¶ 42.

**50.** As of the December 16, 2013 appointment, Defendant Hitchman noted that Plaintiff's Lyrica regimen showed highly effective results, as it had when Plaintiff was taking it prior to his incarceration. *Id.* at ¶ 43.

**51.** At the conclusion of the December 16, 2013 appointment, Defendant Hitchman informed Plaintiff that he should return for a follow-up appointment in three months for further assessment of his fibromyalgia and chronic pain management. *Id.* at ¶ 44.

**52.** On January 28, 2014, Defendant Hitchman examined Plaintiff during a medical appointment at ASP. *Id.* at ¶ 45 and Ex. E.

**53.** The purpose of the January 28, 2014 appointment was to follow-up with Plaintiff's pain and discomfort associated with his fibromyalgia. *Id.* at ¶ 46.

**54.** As of the January 28, 2014 appointment, Plaintiff reported essentially no overall change in his level of discomfort, nor any significant changes in regard to his activities of daily

living.  *Id.* at ¶ 47.

55.　At the January 28, 2014 appointment, Plaintiff again requested an ongoing physical therapy routine, which Defendant Hitchman informed him was not medically indicated for his particular medical condition.  *Id.* at ¶ 48.

56.　At the time of the January 28, 2014 appointment, Plaintiff was taking three 75 mg Lyrica capsules twice a day, as prescribed.  *Id.* at ¶ 49.

57.　At the conclusion of the January 28, 2014 appointment, Defendant Hitchman informed Plaintiff to return for a follow-up appointment in approximately four weeks.  *Id.* at ¶ 50.

58.　On March 17, 2014, Defendant Hitchman examined Plaintiff during a medical appointment at ASP.  *Id.* at ¶ 51 and Ex. F.

59.　The purpose of the March 17, 2014 appointment was to follow-up with Plaintiff's pain and discomfort associated with his fibromyalgia.  *Id.* at ¶ 52.

60.　Plaintiff complained of his ongoing pain and discomfort, and reported intermittent spasms of his back and arms.  *Id.* at ¶ 53.

61.　Defendant Hitchman determined that the discomfort Plaintiff described was not associated with activities of daily living; Plaintiff continued to perform all activities of daily living without dysfunction.  *Id.* at ¶ 54.

62.　During the March 17, 2014 appointment, Plaintiff again requested routine physical therapy appointments.  Defendant Hitchman informed Plaintiff that he had no definitive medical indication for ongoing routine physical therapy appointments.  *Id.* at ¶ 55.

63.　Plaintiff also requested daily use of muscle relaxants, as well as tramadol, which Defendant Hitchman informed him were not objectively indicated for his situation.  *Id.* at ¶ 56.

64.　At the time of the March 17, 2014 appointment, Plaintiff possessed a TENS unit to treat his fibromyalgia symptoms.  *Id.* at ¶ 57.

65.　At the time of the March 17, 2014 appointment, Plaintiff was taking three 75 mg Lyrica capsules twice a day, as prescribed. Defendant Hitchman did not cancel Plaintiff's Lyrica prescription, but rather submitted a Nonformulary Drug Request for its renewal.  *Id.* at ¶ 58.

**66.**     At the conclusion of the March 17, 2014 appointment, Defendant Hitchman informed Plaintiff that he should return for a follow-up appointment in four to six months for further assessment of his fibromyalgia and chronic pain management.  *Id.* at ¶ 59.

**67.**     On August 1, 2014, Defendant Hitchman examined Plaintiff during a medical appointment at ASP.  *Id.* at ¶ 60 and Ex. G.

**68.**     The purpose of the August 1, 2014 appointment was to follow-up with Plaintiff's pain and discomfort associated with his fibromyalgia.  *Id.* at ¶ 61.

**69.**     Plaintiff reported muscle spasms and discomfort, which Defendant Hitchman determined did not significantly impact his activities of daily living.  *Id.* at ¶ 62.

**70.**     Plaintiff again requested to be prescribed muscle relaxants. Defendant Hitchman informed Plaintiff that there was no clear objective indication for the use of muscle relaxants to treat his particular medical condition.  *Id.* at ¶ 63.

**71.**     Plaintiff again requested an ongoing physical therapy routine. Defendant Hitchman informed Plaintiff that there was no indication that prolonged physical therapy was necessary to treat his medical condition: Plaintiff was previously instructed on self-directed physical therapy, and demonstrated proficiency with these exercises.  *Id.* at ¶ 64.

**72.**     Plaintiff also requested non-narcotic pain medications such as tramadol (i.e., Ultram).  Defendant Hitchman again informed Plaintiff that the use of these medications was not medically indicated to treat his medical condition. Plaintiff then asked about alternative medications, and Defendant Hitchman discussed the possibility of prescribing tricyclic antidepressants and other alternative anticonvulsants, but Plaintiff did not wish to use those medications at that time.  *Id.* at ¶ 65.

**73.**     At the time of the August 1, 2014 appointment, Plaintiff possessed a TENS unit which he could use on his own to help treat the symptoms of his fibromyalgia.  *Id.* at ¶ 66.

**74.**     At the time of the August 1, 2014 appointment, Plaintiff was taking 450 mg of Lyrica per day.  Defendant Hitchman did not cancel Plaintiff's Lyrica prescription, but rather submitted a Nonformulary Drug Request for its renewal.  The Nonformulary Drug Request was approved on August 1, 2014 for one year.  *Id.* at ¶ 67; Doc. 47 at p. 15.

**75.** During the August 1, 2014 appointment, Defendant Hitchman also referred Plaintiff for an orthotic evaluation, as his shoes and orthotic inserts were worn. Hitchman Decl. at ¶ 69.

**76.** At the conclusion of the August 1, 2014 appointment, Defendant Hitchman informed Plaintiff that he should return for a follow-up appointment in four to six months for further assessment of his chronic pain management and fibromyalgia. *Id.* at ¶ 69.

**77.** By and large, Plaintiff never went without a Lyrica prescription during the time period relevant to the First Amended Complaint. Ex. A to Whisnand Decl. at AGO022-023 (Pl.'s Dep. at p. 43:18-44:3).

**78.** At no point did Defendant Hitchman cancel Plaintiff's Lyrica prescription. *Id.* at AGO026 (Pl's Dep. at p. 49:21-25).

**79.** During all times relevant to the First Amended Complaint, Plaintiff had near-constant access to a TENS unit. *Id.* at AGO011-012 (Pl's Dep. at p. 24:23-25:11).

**80.** At no point did Defendant Hitchman seek to take away Plaintiff's TENS unit. *Id.* at AGO021 (Pl's Dep. at p. 42:7-19).

**81.** Robaxin, tramadol (i.e., Ultram), and an ongoing physical therapy routine were not medically indicated to treat Plaintiff's particular medical condition. Hitchman Decl. at ¶ 77.

Plaintiff attempts to raise a genuine dispute of material fact by asserting "That exact treatment had been given by CDCR for years, effectively. Such treatment is indicated and to ignore that is no less than 'purposeful' indifference, malice, vengence [sic], vindictiveness." (ECF No. 47 at p. 15.) Despite this assertion, Plaintiff is not a medical expert and cannot opine as to whether a different course of treatment was medically indicated. Fed. R. Evid. 701(c).

**82.** Defendant Hitchman's course of treatment for Plaintiff was based on his professional medical judgment. Hitchman Decl. at ¶ 71.

Plaintiff argues that Defendant Hitchman's "course of [non] treatment was based on indifference, deliberate indifference and not upon sound professional medical judgment." Doc. 47 at p. 15. Plaintiff's legal conclusions do not raise a genuine dispute of material fact. Moreover, Plaintiff is not a medical expert and cannot opine as to whether Defendant

Hitchman's course of treatment was based on professional judgment.  Fed. R. Evid. 701(c).

**C.  Discussion**

Plaintiff's sole remaining claim in this action is against Defendant Hitchman for deliberate indifference to his serious medical needs in violation of the Eighth Amendment to the United States Constitution.  (ECF No. 37.)

A prisoner's claim of inadequate medical care does not constitute cruel and unusual punishment in violation of the Eighth Amendment unless the mistreatment rises to the level of "deliberate indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). The two part test for deliberate indifference requires the plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." *Jett*, 439 F.3d at 1096. A defendant does not act in a deliberately indifferent manner unless the defendant "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). "Deliberate indifference is a high legal standard," *Simmons v. Navajo Cty. Ariz.*, 609 F.3d 1011, 1019 (9th Cir. 2010); *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown where there was "a purposeful act or failure to respond to a prisoner's pain or possible medical need" and the indifference caused harm, *Jett*, 439 F.3d at 1096.

In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir. 1980), citing *Estelle,* 429 U.S. at 105 06. "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106; *see also Anderson v. Cty. of Kern*, 45

F.3d 1310, 1316 (9th Cir. 1995). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. *See Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990). Additionally, a prisoner's mere disagreement with diagnosis or treatment does not support a claim of deliberate indifference. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

In this case, Defendant Hitchman concedes that there is a triable issue of fact regarding whether Plaintiff's fibromyalgia objectively presented a serious medical need. (ECF No. 50 at pp. 1-2.) Nonetheless, Defendant Hitchman contends that Defendant's response to the need was not "deliberately indifferent," as a matter of law, because it is based on a disagreement over the proper course of treatment. (ECF No. 41-1 at 16.) The Court agrees.

According to the undisputed evidence, Plaintiff was diagnosed with fibromyalgia prior to his incarceration. UMF 4. While incarcerated at ASP, Defendant Hitchman provided treatment to Plaintiff on seven different occasions between March 18, 2013, and August 1, 2014. UMF 6, 28, 36, 42, 52, 58, 67. Prior to his March 18, 2013 treatment with Defendant Hitchman, Plaintiff had a nonformulary prescription for Robaxin, a muscle relaxant, along with a prescription for tramadol (Ultram) and a prescription for Lyrica. UMF 13, 17, 25-26. Throughout Plaintiff's treatment, Defendant Hitchman declined to renew Plaintiff's Robaxin and tramadol prescriptions because they were not medically indicated for treatment of Plaintiff's fibromyalgia. UMF 1, 81. Defendant Hitchman discontinued Robaxin based on the assessment of a Physical Medicine and Rehabilitation physician, who recommended that Plaintiff not use muscle relaxants as there was no clear medical indication for their use in treating Plaintiff's condition. UMF 15. However, at no time did Defendant Hitchman discontinue Plaintiff's prescription for Lyrica, which is one of three medications approved by the FDA to treat fibromyalgia. UMF 25-26, 78. During the course of treatment by Defendant Hitchman, Plaintiff's Lyrica regimen showed highly effective results, and Plaintiff was not referred to a rheumatology consultant because Plaintiff was stable in his clinical presentation. UMF 47, 50. Defendant Hitchman also declined Plaintiff's request for ongoing physical therapy because Plaintiff had previously been instructed in self-directed exercises, and it was not medically indicated. UMF 19, 20, 81. Further, throughout the relevant time period, Plaintiff had access to a TENS unit, which he could use on his own to help treat his

fibromyalgia symptoms.  UMF 79, 80.

Based on the foregoing, Defendant Hitchman has demonstrated that there is an absence of evidence supporting Plaintiff's claim that Defendant Hitchman was deliberately indifferent to Plaintiff's medical needs.   The burden therefore shifts to Plaintiff to demonstrate a genuine issue of material fact by presenting affirmative evidence from which a jury could find in his favor. *Stefanchik*, 559 F.3d at 929.

Plaintiff contends that a genuine issue of material fact exists as to whether Defendant Hitchman was deliberately indifferent to his serious medical needs.   Plaintiff asserts that Defendant Hitchman knew he "needed medication but disregarded that need, deliberately." (ECF No. 47 at p. 7.)  Plaintiff further asserts that Defendant Hitchman knew of, but disregarded Plaintiff's severe pain "that interfered with his daily living" and "significantly disabled the plaintiff from reasonable independent function."  (*Id.* at p. 8.)

However, the uncontradicted evidence reflects that Plaintiff received medical attention from Defendant Hitchman multiple times during the relevant period, and that Defendant Hitchman continued Plaintiff's Lyrica prescription to treat his fibromyalgia, which showed highly effective results.  Additionally, the undisputed evidence shows that Plaintiff had access to a TENS unit to treat his pain, and that in 2014, Defendant Hitchman found no significant changes in Plaintiff's activities of daily living, and Plaintiff continued to perform all activities of daily living without dysfunction.  UMF 54, 61, 69.  To the extent Plaintiff disagrees with the treatment provided by Defendant Hitchman, believing that additional medications were needed, such a disagreement is not sufficient to establish deliberate indifference to serious medical needs. *Sanchez*, 891 F.2d at 242.

Plaintiff next contends that his medications were, in fact, indicated and the acceptable course of treatment was chosen by his previous doctors and medical staff at CDCR and only deliberate indifference could explain Defendant Hitchman's stopping the subject medications. (ECF No. 47 at pp. 8-9.)  Plaintiff declares that he had been prescribed tramadol by a licensed medical doctor at Avenal State Prison and had been taking it safely and effectively for more than one year before Defendant Hitchman directed its termination.  Plaintiff also asserts that he had

been receiving physical therapy for more than two years while in the custody of CDCR. (ECF No. 47 at pp. 16, 18.) At best, Plaintiff has identified a difference of opinion between medical providers regarding his treatment. However, a difference of opinion between medical professionals as to the need to pursue one course of treatment over another generally does not amount to deliberate indifference to serious medical needs. *Toguchi,* 391 F.3d at 1058; *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996); *Sanchez*, 891 F.2d 240, 242 (9th Cir. 1989). Instead, "to prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to [the prisoner's] health.'" *Toguchi*, 391 F.3d at 1058 (quoting *Jackson*, 90 F.3d at 332).

Here, the uncontradicted evidence demonstrates that Defendant Hitchman declined to renew Plaintiff's Robaxin and tramadol prescriptions because these medications were not indicated for Plaintiff's condition. Simply because other doctors or medical staff prescribed Robaxin and tramadol, does not mean that Defendant Hitchman also was required to renew Plaintiff's prescriptions for such medications. The same is true for Plaintiff's physical therapy. Given Defendant Hitchman's position that Robaxin, tramadol and ongoing physical therapy were not medically indicated, Plaintiff has failed to show that the chosen course of treatment was medically unacceptable under the circumstances.

In an effort to raise a material question of fact, and to support his claims that Robaxin and Ultram (tramadol), along with Lyrica, was the acceptable course of treatment, Plaintiff submitted two letters from his brother, who is identified as Richard F. Cody, Jr., M.D. (ECF No. 47, Ex. F at pp. 76, 77.) These letters are not sufficient to raise a genuine dispute of material fact. First, the letters are not competent evidence from a medical expert regarding the appropriate course of treatment for Plaintiff's condition. Fed. R. Evid. 702. There is no indication that Plaintiff's brother is a licensed physician qualified to render expert testimony regarding Plaintiff's medical condition and the appropriate course of treatment. Plaintiff has made no showing that his brother has the necessary knowledge, skill, experience, training or education to qualify as an expert. *Id.* Second, even if Plaintiff's brother is a licensed physician and considered an expert, there is

nothing in these letters, dated May 6 and June 21, 2016, indicating that tramadol and Robaxin were medically indicated for Plaintiff's condition during the relevant time period or that Plaintiff suffered any ill effects from the discontinuation of these medications in 2013. Rather, the primary concern expressed in these letters appears to be the discontinuation of Plaintiff's Lyrica in 2016. (ECF No. 47, Ex. F at p. 76.) As indicated above, at no time did Defendant Hitchman discontinue Plaintiff's Lyrica prescription.

When considering the undisputed evidence detailed above, a reasonable jury could not conclude that Defendant Hitchman was deliberately indifferent to Plaintiff's medical needs in violation of the Eighth Amendment. Therefore, the Court recommends granting Defendant Hitchman's motion for summary judgment on that basis, and it is unnecessary to reach Defendant's remaining arguments.

## VI. Plaintiff's Motion to Amend

Plaintiff moves for leave to file a second amended complaint to add a request for monetary damages and an emergency injunction in his prayer for relief. (ECF No. 40 at p. 2.)

According to the Discovery and Scheduling Order issued in this action, the deadline to amend pleadings in this action was December 5, 2015. (ECF No. 14.) As Plaintiff's request to amend comes after expiration of the Scheduling Order deadline for amendment, the Court must apply the standard for amending a scheduling order under Federal Rule of Civil Procedure 16, rather than the liberal amendment standard of Rule 15. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294–95 (9th Cir. 2000) (district court correctly addressed motion for leave to amend under Rule 16 because it had issued a pretrial scheduling order that established a timetable for amending the pleadings and the motion was filed after the deadline had expired).

Pursuant to Rule 16(b), a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The "good cause" standard "primarily considers the diligence of the party seeking the amendment.*" Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). The district court may modify the scheduling order "if it cannot reasonably be met despite the diligence of the party seeking the extension." *Id.* If the party was not diligent, the inquiry should end. *Id.*

Here, Plaintiff has not filed a motion to amend the scheduling order. Regardless, there is no indication that Plaintiff was diligent in seeking an amendment to modify the relief requested in his first amended complaint. Plaintiff has failed to demonstrate good cause for his belated motion. Indeed, Plaintiff does not explain why he waited more than a year after filing his amended complaint and approximately six months after the relevant deadline to seek leave to amend. Plaintiff's request to amend should be denied on that basis alone. Even if the Court were to apply the more liberal standard for amendment under Rule 15, however, Plaintiff's request also should be denied. When considering whether to grant leave to amend under Rule 15, a district court considers the presence of any of four factors including: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; and (4) futility. *Johnson*, 975 F.2d at 608-09; *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001). As the Court recommends that Defendant Hitchman's motion for summary judgment be granted on Plaintiff's sole remaining claim in this action, any request for monetary damages or injunctive relief related to that claim will be futile and rendered moot.

Insofar as Plaintiff concurrently requests leave to supplement his complaint to set forth transactions, occurrences or events since the date of filing his amended complaint, his request also should be denied. A court "may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). Although leave to permit a supplemental pleading is generally favored, the supplemental pleading cannot be used to introduce a "separate, distinct and new cause of action." *Planned Parenthood of S. Ariz. v. Neely*, 130 F.3d 400, 402 (9th Cir. 1997) (internal quotation marks and citations omitted); *see also San Luis & Delta–Mendota Water Authority v. U.S. Dep't of Interior*, 236 F.R.D. 491, 497 (E.D. Cal. 2006) (setting forth nine factors for determining whether to permit supplemental pleadings, including the relatedness of the original and supplemental complaints).

Although Plaintiff has not identified the transactions, occurrences or events at issue, it appears he is attempting to add allegations that "the medications for which the basis of this lawsuit stems, are presently being denied and deprived" at his current institution. (ECF No. 40 at

p. 4.) Plaintiff is no longer incarcerated at ASP, where the events in this action are alleged to have occurred. Plaintiff therefore cannot utilize a supplemental pleading to add separate and distinct claims against CDCR employees at a separate institution, which could not properly be joined in this action.

For these reasons, the Court will recommend that Plaintiff's motion to amend be denied.

## VII. Conclusion and Recommendation

Based on the foregoing, IT IS HEREBY RECOMMENDED that:

1. Defendant Hitchman's motion to strike Plaintiff's improper surreply be granted;

2. Plaintiff's unauthorized surreply (ECF No. 51) be stricken from the record;

3. Plaintiff's motion to deny Defendant's motion for summary judgment be denied;

4. Plaintiff's motion for the appointment of counsel be denied;

5. Defendant Hitchman's motion for summary judgment (ECF No. 41) be granted; and

6. Plaintiff's motion to amend (ECF No. 40) be denied.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).


IT IS SO ORDERED.

Dated:   __August 2, 2017__           ___/s/ Barbara A. McAuliffe___
                                        UNITED STATES MAGISTRATE JUDGE